Craig A. Hill, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued August 24, 1981, before Judges ROGERS, BLATT and MACPHAIL, sitting as a panel of three.

*Richard Thrasher,* for petitioner.

*William Kennedy,* Assistant Attorney General, with him *Richard Wagner,* Chief Counsel, *Robert F. Skwaryk,* Associate Counsel, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

PER CURIAM, September 18, 1981:

The unemployment compensation claimant in this case has appealed from an Unemployment Compensation Board of Review decision declaring him ineligible for willful misconduct, consisting of having failed to comply with his employer's rule described by the employer's representative at the referee's hearing as "an absence of one full work day plus one hour of the next scheduled work day without notification is considered voluntary quit."

The dates of the asserted infraction are January 7 and 8, 1980.

The claimant was ill at work on December 27, 1979. His illness, a kind of heart trouble, was not correctly diagnosed until about January 8, 1980, and he was not released to return to work until January 28, 1980, when he was told by his employer that he had been terminated and his job filled by another person. It is agreed that the claimant reported his illness and inability to work to his employer on December 28, 1979, and again on January 2, 1980, and that on January 2, 1980, he reported that he would return to work on January 7, 1980.

The claimant testified that he called at his employer's place of business on January 7, 1980, by telephone, that he spoke with his supervisor, a Mr. Romascavage, whom he told that he would not be at work that day and that he had an appointment with a doctor to whom he had been referred by his first treating physician. He further testified that he called his supervisor on the telephone on January 9, 1980, and told him that the new doctor required more tests, to which the supervisor responded by directing him to make sure that he had a doctor's certificate when he reported back to work. The claimant also produced a copy of his telephone bill which recorded calls to his employer's place of business on January 7 and January 9.

The employer's testimony consisted of the testimony of the personnel manager who testified that incoming calls were taken by someone at the switchboard who writes the times of the call and the reason for the call and supplies the paper to him, the personnel manager. He testified that he received no such record of calls from the claimant on January 7 or January 9, 1980. He also testified, however, that "we also have the person usually talk with the supervisor." The supervisor, Mr. Romascavage, did not testify. The personnel manager handed the referee a writing purported to be over the signature of Romascavage recording that he received no call from the claimant on January 7 or 8 (sic) or anytime thereafter.

The Board found "the claimant failed to report back to work on January 7, or 8, 1980, and failed to notify his supervisor when he would return to work." This finding is not supported by any competent evidence in the record. The supervisor, to whom it will be remembered reports of expected absences might properly be made, did not testify and the writing presented at the hearing by the personnel manager was, of course, hearsay. The only other evidence concerning reporting to the supervisor was that of the claimant to the effect that he had reported both on January 7 and January 9.

The Board made no finding with respect to the switchboard memoranda kept by the operator and delivered to the personnel manager; but even if a finding had been made that no such call from the claimant was made or received in this fashion, it would be of no consequence because it is clear that calling one's supervisor was an acceptable alternative means of reporting.

There being no competent evidence supporting the charge that the claimant was guilty of willful misconduct in failing to report his proposed further absences

on January 7, we are required to, and do, reverse the Board's order denying compensation and remand the record to the Board for computation of benefits.

## Per Curiam Order

And Now, this 18th day of September, 1981, the order of the Board of Review dated May 8, 1980, is reversed and the record is remanded for computation of benefits.